UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
VIVIAN L. HAUSCH,                                  :
                                                   :
                        Plaintiff,                 :            13-cv-6871 (NSR)
            -against-                              :
                                                   :          MEMORANDUM OPINION
STEVEN A. ECKLOND, individually, THOMAS  :             AND ORDER
GIORDANO, individually, STEPHEN QUIGLEY,  :
Individually, GREG LUISI, individually,            :
JANETTE HAYES, individually, WILLIAM M.            :
WILLIAMS, JR., a/k/a BILL WILLIAMS,                :
Individually, JOHN D. CAVALLARO,                   :
individually, DAVID A. BARBUTI, individually,  :
and The VILLAGE OF TUCKAHOE, New York,  :
                                                   :
                        Defendants.                :
-------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Vivian L. Hausch ("Plaintiff") commenced the instant action pursuant to 42

U.S.C. § 1983 against the Village of Tuckahoe ("Village"); the Mayor of the Village, Steven A.

Ecklond ("Ecklond"); the Deputy Mayor of the Village, Thomas Giordano ("Giordano"); three

members of the Board of Trustees of the Village, Stephen Quigley ("Quigley"), Greg Luisi

("Luisi"), and Janette Hayes ("Hayes"); the Village Building Inspector, Bill Williams

("Williams"); the Village Attorney, John D. Cavallaro ("Cavallaro") (collectively "Village

Defendants"); and a registered architect hired by the Village, David A. Barbuti ("Barbuti")

(collectively with Village Defendants, "Defendants"); seeking monetary damages for alleged

violations of her right to be free from unreasonable searches and seizures guaranteed by the

Fourth and Fourteenth Amendments to the U.S. Constitution.  Specifically, Plaintiff asserts that

Defendants or persons under their control entered a building located at 99 Main Street,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/30/2014

Tuckahoe, New York (the "Premises") and searched her "space" without her consent or a warrant.

Defendants now move pursuant to Rule 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief may be granted.  Both Barbuti and the Village Defendants assert that (i) Plaintiff lacks standing to bring the instant action, (ii) the entry into the Premises was lawful,[1] and (iii) all individual defendants are entitled to qualified immunity.  The Village Defendants additionally assert that (iv) Plaintiff does not allege the individual Village Defendants were personally involved in entering the Premises, and (v) Plaintiff cannot sustain a municipal liability claim against the Village.  For the following reasons, Barbuti and the Village Defendants' motions are granted.

## I. FACTUAL BACKGROUND

The following facts are alleged in the Complaint, appear in documents incorporated by reference in the Complaint, or are facts of which the Court may take judicial notice.  Non-party P&N Tiffany Properties Inc. ("P&N"), a corporation formed under the laws of the State of New York, has owned the Premises since September 3, 1999.  At that time, Plaintiff was a practicing attorney and a member of the Bar of the State of New York.  From December 10, 1999, through the date Plaintiff filed the instant action, the Premises allegedly contained "furniture, books, and other items intended to be used as part of the [P]laintiff's law practice."  (Compl. ¶ 16.)  Plaintiff also allegedly stored "clients' files, antiques, collectibles, memorabilia, personal items, personal papers, and items of sentimental value" on the Premises.  (*Id.* ¶ 17.)  Plaintiff alleges that

---

[1] Barbuti asserts this particular argument for the first time in his reply papers.  Although "a district court is free to disregard argument raised for the first time in reply papers," *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009), "the Second Circuit has made it abundantly clear that a district court has *discretion* to consider a belatedly-raised argument," *id.* (citing *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)).  The Court thus considers Barbuti's argument here.

Barbuti, the Village Defendants, and/or persons under their direction and control entered upon the Premises between October 17, 2012, and June 18, 2013.  She alleges that no warrant to search the Premises was issued and that she did not consent to a search of the Premises.

Plaintiff, P&N, and the Village have had numerous legal battles since P&N purchased the Premises, and the use or abandonment of the Premises appears uncertain.  In 2001, the Village fined Plaintiff for a zoning code violation, namely, changing occupancy from a fish market to a law office without obtaining a certificate of occupancy, though the conviction was twice overturned on appeal.  *People v. Hausch*, No. 2001-1041 W CR, 2002 WL 1967944, at *1 (App. Term June 6, 2002) (reversing conviction for jurisdictional defect, as accusatory instrument did not set forth date or period of time when violation occurred); *People v. Hausch*, 3 Misc. 3d 20, 21 (App. Term 2004) (reversing conviction for untimely filing of second accusatory instrument); *see also P&N Tiffany Props., Inc. v. Vill. of Tuckahoe*, 33 A.D.3d 61, 62 (2d Dep't 2006) (noting that P&N had been fined upon conviction of violating the zoning code).  Meanwhile, P&N brought an Article 78 proceeding to compel Williams, the Village, and other related parties to issue a certificate of occupancy for the Premises.  *See P&N Tiffany Props. v. Williams*, 302 A.D.2d 466 (2d Dep't 2003).  In this proceeding, the Supreme Court of the State of New York, County of Westchester ("Westchester Supreme Court") entered orders: (a) on July 16, 2001, directing Williams in his capacity as building inspector to arrange for the inspection of the Premises; (b) on October 17, 2001, directing P&N to conform to the previous order by permitting an inspection; and (c) on November 30, 2001, directing Plaintiff and P&N, whom she represented in the action, to comply with its outstanding orders.  *See id.* (affirming the July 16 and November 30, 2001, orders); *In re Hausch*, 36 A.D.3d 141, 144 (2d Dep't 2006).

3

Plaintiff also brought an action against the Village, among others, alleging defamation for statements appearing in the press in August and September 2000.  That action was dismissed on the merits on November 1, 2001, for failure to properly plead defamation, and the dismissal was affirmed.  *Hausch v. Clarke*, 298 A.D.2d 429 (2d Dep't 2002).  Four days after dismissal and before the appeal was decided, Plaintiff brought a second defamation action against the same parties.  The second defamation case was dismissed on June 5, 2003, for failure to bring the claim within the one-year limitations period.  *Hausch v. Clarke*, 8 A.D.3d 436 (2d Dep't 2004). In 2003, P&N brought an action against the Village seeking to invalidate a 1999 law which incorporated by reference a provision setting fines and penalties for local code violations.  *See P&N Tiffany Props., Inc. v. Vill. of Tuckahoe*, 33 A.D. at 62.  P&N alleged the law was adopted in violation of the notice provision of the Village Law.  *Id.*  This proceeding was dismissed for untimeliness.  *Id.* at 65–66.  In all the above actions, Plaintiff either represented herself *pro se* or represented P&N as its attorney.

In 2006, Plaintiff was suspended from the practice of law for six months.  *In re Hausch*, 36 A.D.3d at 145.  One of the charges against her stemmed from her "making conflicting representations regarding the location of her law office."  *Id.*  In particular, Plaintiff represented to the Grievance Committee that her law office was not located on the Premises and to the Westchester Supreme Court in *P&N Tiffany Properties v. Williams*, the Article 78 proceeding, that she "never opened her law office" on the Premises, whereas she "indicated or implied" to Williams, the New York State Department of State, and the Office of Court Administration that she had a law office on the Premises.  *Id.*

On March 5, 2012, the Village and related parties brought an action in the Westchester Supreme Court against P&N—the underlying action giving rise to the alleged search of the

Premises—pursuant to New York Village Law § 20-2006 seeking a judgment (1) declaring that

P&N was in violation of §§ 6-70 and 6-71 of the Village Code, (2) enjoining P&N from

continuing to violate the Village Code, (3) declaring the Premises a public nuisance, (4) directing

that P&N repair or remove the building on the Premises, and (5) granting the Village permission

to remove the building from the Premises and placing a lien on the property should P&N not

repair or remove the Premises within 60 days.  The Village's verified complaint in that action

alleged, *inter alia*, that the Premises was vacant and had not been maintained; that the building

was in a state of disrepair, unsafe, and open to the elements; that on or about December 28, 2006,

the Village erected a sidewalk shed to prevent parts of the building from falling onto the

sidewalk and causing injury to persons or property; and that P&N acknowledged the need to

repair the Premises in July 2009.  The summons and verified complaint were served on the New

York Secretary of State on March 8, 2012, pursuant to New York Business Corporations Law

§ 306.  The summons listed P&N's address as:

> P&N TIFFANY PROPERTIES, INC.
> C/O VIVIAN HAUSCH, ESQ.
> 40 FISHER AVENUE
> TUCKAHOE, NEW YORK, 10707[2]

(Barbuti Ex. C.2.A.).

On October 10, 2012, the Westchester Supreme Court granted the Village's motion for a

default judgment against P&N, holding that the Village established the merits of its claims based

upon the affirmations and exhibits filed with the motion.  On October 17, 2012, the court entered

---

[2] As of July 23, 2014, this is the address—and Plaintiff is the addressee—to which the New York Department of
State mails any process accepted on behalf of P&N.  *See Entity Information*, NYS Department of State, Division of
Corporations, http://www.dos.ny.gov/corps/bus_entity_search.html (enter "P&N Tiffany Properties" as business
entity name; click "Search Database"; follow "P&N TIFFANY PROPERTIES INC." hyperlink) (last visited July
24, 2014).

judgment ("the Judgment") enjoining P&N from continuing to violate the Village Code and directing P&N to repair or remove the building on the Premises within 60 days.  The court further granted the Village permission to remove the building and assess the costs associated therewith against P&N by placing a lien on the Premises if P&N failed to obey the order in the allotted time.  On October 26, 2012, the Village served the Judgment with Notice of Entry on P&N by serving the New York Secretary of State pursuant to Corporations Law § 306, and by posting the Judgment in a clear sleeve on the front of the building.

On June 27, 2013, the Village moved to modify the Judgment.  In connection with the motion, the Village submitted Barbuti's affidavit dated June 18, 2013, which Plaintiff's Complaint in the instant action incorporates by reference.  According to this affidavit, after entry of the Judgment, the Village retained Barbuti to assess the Premises and determine the specifications for demolishing the building.  Upon inspection, Barbuti noted that the storefront was in danger of collapse and that the sidewalk shed which the Village erected in 2006 might not be sufficient to prevent injury to persons or property.  He also noted the possibility of repairing the building to secure it from further threat of collapse without having to demolish the entire structure.  Barbuti opined that the Judgment should be modified to allow "the immediate temporary securing of the storefront façade" and "the repair/reconstruction of [the] storefront façade and related repairs to permanently secure the building."  (Vill. Defs.' Ex. D ¶ 5.)  He opined further that the remainder of the building was structurally sound such that repair was more appropriate than demolition.

On September 5, 2013, the Westchester Supreme Court modified the Judgment, allowing the Village to immediately secure the storefront façade, to repair the façade and perform related repairs to secure the building from the elements, and to assess the costs of these actions against

6

P&N by placing a lien on the Premises.  Plaintiff subsequently filed the instant action, on September 27, 2013.

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  Although a court "must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

In addition to the allegations in the complaint, a district court deciding a motion to dismiss may consider documents attached as exhibits to or incorporated by reference in the complaint, and matters of which judicial notice may be taken.  *Roe v. Johnson*, 334 F. Supp. 2d 415, 419-420 (S.D.N.Y. 2004); *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp.

2d. 273, 275 (S.D.N.Y. 2002); *cf. Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 223 (S.D.N.Y. 2013) (citing *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008)). The court may take judicial notice of matters of public record pursuant to Rule 201(b) of the Federal Rules of Evidence. *Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005); *Roe*, 334 F. Supp. 2d at 420; *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 696 (S.D.N.Y. 2002). As there is sufficient material to decide the motions while excluding other matters outside the pleadings which Barbuti and the Village Defendants provide, the Court declines to treat the motions as motions for summary judgment. *See* Fed. R. Civ. P. 12(d).

## III. FOURTH AMENDMENT

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Fourth Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy." *United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 2008) (internal quotation marks and citations omitted). It applies with equal force to both federal and state government actions. *See* U.S. Const. amend. XIV; *Maryland v. King*, 133 S. Ct. 1958, 1968 (2013); *Wolf v. Colorado*, 338 U.S. 25, 27–28 (1949).

### A. Standing

Barbuti and the Village Defendants assert that Plaintiff lacks standing to assert a Fourth Amendment violation because the Complaint does not allege she had a legitimate expectation of privacy in the Premises. *See Nieves v. N.Y.C. Police Dep't*, 716 F. Supp. 2d 299, 307 (S.D.N.Y. 2010). To determine whether a person has a "legitimate expectation of privacy" in the place searched, a court must determine "first, whether the individual had a subjective expectation of

8

privacy; and second, whether that expectation of privacy is one that society accepts as

reasonable." *Id.* (quoting *United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008)). "A

[person] lacks 'standing' in the Fourth Amendment context when h[er] contacts with the

searched premises are so attenuated that no expectation of privacy [s]he has in those premises

could ever be considered reasonable." *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997).

An individual's ownership or possessory interest "is a factor generally considered" in

determining whether his or her expectation of privacy is reasonable. *Id.* (citing *United States v.

Osorio*, 949 F.2d 38, 40 (2d Cir. 1990)). However, the "lack of such an interest does not rule out

the possibility that he [or she] may still show a reasonable expectation of privacy." *Id.* (citations

omitted). Thus, courts have found a privacy interest in someone else's home or hotel room

where the individual was an overnight guest; in the individual's rental storage unit; and in the

individual's business premises, including desk drawers, file cabinets, and the contents of his or

her office computer. *See Hamilton*, 538 F.3d at 168 (citations omitted).

     Here, the fact that Plaintiff brought the instant action demonstrates her subjective

expectation of privacy. As to an objective expectation, Plaintiff alleges P&N is the property

owner but that Defendants searched her "space" at the Premises. She does not allege that she

owned or rented this space, or even that she visited the Premises. Her assertion in opposition

that she "had a possessory interest" in the Premises and "had exclusive custody and control over

her private office" is not properly considered. (Pl.'s Opp'n Br. 9.) However, the Complaint does

allege Plaintiff stores property on site, including client files and other business-related items.

Plaintiff's alleged use of the Premises for storage implies some control of the space she allegedly

had thereon. *Cf. United States v. Johns*, 851 F.2d 1131, 1136 (9th Cir. 1988) (finding

expectation of privacy in storage unit although individual's name did not appear on rental

agreement for unit), *cited in Hamilton*, 538 F.3d at 168.  The Court also may take judicial notice

that the Village twice charged Plaintiff instead of P&N with converting use of the Premises to a

law office without a certificate of occupancy and that the New York Secretary of State provides

Plaintiff with copies of any process served upon the State on P&N's behalf.  Viewing the

judicially noticed facts alongside Plaintiff's complaint in the light most favorable to Plaintiff, the

Court cannot find as a matter of law that Plaintiff has no expectation of privacy in the Premises.[3]

### B. Allegation of Municipal Policy or Practice

Because municipalities may not be held vicariously liable for the actions of their

employees, a claim against a municipality must be premised on the theory that it maintained a

policy, practice, or custom that caused the plaintiff's constitutional injury.  *See Monell v. N.Y.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Courts in this Circuit apply a two prong test for

§ 1983 claims brought against a municipality.  *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44

(2d Cir. 1985) (citation omitted).  First, the plaintiff must "prove the existence of a municipal

policy or custom in order to show that the municipality took some action that caused his injuries

beyond merely employing the misbehaving officer."  *Id.* (citation omitted).  Second, the plaintiff

must establish a "'direct causal link between [the] municipal policy or custom and the alleged

constitutional deprivation.'"  *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y.

2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *accord Abreu v. City of New*

*York*, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (quoting *City of Canton*, 489 U.S. at 385).  A

---

[3] The Court need not determine whether the purported condemnation of the Premises, if in fact the Judgment constitutes such, means Plaintiff cannot have a reasonable expectation of privacy thereon, *cf. United States v. Washington*, 573 F.3d 279, 283 (6th Cir. 2009), because the Complaint may be dismissed for other reasons for which there is more settled law.

plaintiff "need not show that the municipality had an explicitly stated rule or regulation" to establish a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998).

> To satisfy the first requirement, a plaintiff must prove the existence of either:
>
> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases). Under second option, a plaintiff may establish municipal liability "for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Municipal liability for a single decision "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988) (plurality opinion) (explaining that only municipal officials who have "final policymaking authority" concerning the particular activities giving rise to a plaintiff's claims "may by their actions subject the government to § 1983 liability"); *cf. DeCarlo*, 141 F.3d at 61 (holding that proof of "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy" (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (internal quotation marks omitted))). "In the end, therefore, a plaintiff must demonstrate

11

that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Hayes,* 853 F. Supp. 2d at 439 (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)) (internal quotation marks omitted).

Here, as the Complaint incorporates by reference Barbuti's affidavit of June 18, 2013, Plaintiff alleges both requirements of a *Monell* violation.  As to the existence of a municipal policy, Barbuti acknowledges that the Village hired him to enter upon and inspect the Premises. This qualifies as a single decision by policy makers.  *See Pembaur*, 475 U.S. at 483.  As to establishing a direct causal link between the municipal policy and the alleged constitutional violation, Barbuti acknowledges that he in fact entered the Premises.  However, as discussed below, entry onto the premises was lawful.

### C. No Violation of Fourth Amendment

The Village Defendants argue that entry onto the Premises was lawful based on the Judgment of the Westchester Supreme Court, that alternatively there were exigent circumstances allowing for entry, and that Plaintiff does not properly allege personal involvement by the individual Village Defendants.  Plaintiff disputes all three contentions.  Plaintiff also asserts that she never received notice of the proceeding against P&N.  Barbuti asserts that entry into the Premises was lawful, relying on the arguments made by the Village Defendants in their moving papers.

As to whether Plaintiff received notice of the underlying proceeding, the Court takes judicial notice of the fact that service of all process on P&N is achieved under state law by serving the New York Secretary of State, who serves P&N by mailing process to Plaintiff.  *See* N.Y. Bus. Corp. Law § 304(a) ("The secretary of state shall be the agent of every domestic corporation . . . upon whom process against the corporation may be served."); *id.* § 306(b)(1)

12

("Service of process on the secretary of state as agent of a domestic . . . corporation shall be made by personally delivering to and leaving . . . with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee . . . .  Service of process on such corporation shall be complete when the secretary of state is so served.  The secretary of state shall promptly send one of such copies by certified mail, return receipt requested, to such corporation, at the post office address, on file in the department of state, specified for the purpose.").  Thus, Plaintiff had constructive notice of the proceeding.  Even if, as Plaintiff argues, the address to which the state sends process is no longer her business address, the fact that neither she nor P&N has updated the address with the New York Secretary of State does not detract from the fact that the Village properly gave her notice by complying with the law.  *See id.* § 304(d) ("Any designated post-office address to which the secretary of state shall mail a copy of process served upon him as agent of a domestic corporation or a foreign corporation, shall continue until the filing of a certificate under this chapter directing the mailing to a different post-office address.").

    As to personal involvement, Plaintiff alleges that "between October 17, 2012, and June 18, 2013, *the [D]efendants* and/or persons under their direction or control entered [the Premises]" and "searched the [P]laintiff's space" thereupon.  (Compl. ¶¶ 18, 20 (emphasis added).)  Taking these factual allegations as true and construing them liberally, the Complaint sufficiently alleges the personal involvement of each Defendant.  Nonetheless, the Court determines that the alleged entry was lawful based upon the terms of the Judgment, which was rendered in an action brought to enforce a regulatory scheme.

13

Although government officials are generally required to obtain a warrant before conducting a search, the Supreme Court has "permitted exceptions where 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmon, J., concurring)). "[F]or similar reasons, . . . in certain circumstances, government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant and probable-cause requirements as long as their searches meet 'reasonable legislative or administrative standards.'" *Id.* (quoting *Camara v. Mun. Court*, 387 U.S. 523, 538 (1967)). Where a special governmental need exists, the Supreme Court applies "a balancing test that weigh[s] the intrusion on the individual's interest in privacy against the 'special needs' that support[] the [government] program." *Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001); *accord New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).

Here, the Village Code of the Village of Tuckahoe ("Village Code"), enforced in the New York courts, constitutes such a regulatory scheme, and its purpose of ensuring the safety of buildings within Village territory constitutes a special need beyond the normal need for law enforcement. *See Griffin*, 483 U.S. at 873. The Village Code states: "Any building, wall or structure or any part of a building, wall or structure that from any cause is or shall become dangerous or unsafe shall be taken down and removed or made safe and secure in compliance with the provisions of this article." Village Code § 6-71. In the Village Code, "building and/or wall and/or structure" means "[a]ny building, wall or structure located within the incorporated area of the Village of Tuckahoe, whether or not same is situate in a business, industrial, residential or other section" of the Village. *Id.* § 6-70(d). The Village Code defines "dangerous and/or unsafe buildings, walls or structures" to include, *inter alia*, buildings that are

14

structurally unsafe, unstable or unsanitary; . . . otherwise dangerous to life or property; . . . constituting a hazard to health or safety because of inadequate maintenance, dilapidation, obsolescence, decay, deterioration or abandonment; [or] a nuisance, having parts which are so attached that they may fall and injure members of the public, or public or private property . . . .

*Id.* § 6-70(e).  The building inspector, Defendant Williams, "shall report all dangerous or unsafe buildings, walls or structures in the Village of which he has knowledge . . . and which he believes in any way violate the provisions and terms of this article."  *Id.* § 6-72.  Where the building inspector reports such violations, the Village Board "shall appoint an official to make an inspection of such building, wall or structure and to make a written report thereon to the Village Board."  *Id.* § 6-73.  The Village Board must also direct the building inspector to serve the property owner[4] with "a notice containing a description of the premises sufficient for identification, a statement of the particulars in which the building or structure is unsafe or dangerous and an order requiring same to be made safe and secure or removed."  *Id.* § 6-74.  Where the building owner neglects or refuses to comply with the order to make the building safe or remove it, the Village Board "shall cause a survey of such building, wall or structure to be made" by appointing an inspector and an architect to make the survey.  *Id.* § 6-75(a).  The building inspector must notify the property owner of the impending survey and direct the owner to appoint an engineer or architect as a third surveyor.  *Id.* § 6-75(b).  If the owner refuses or neglects to appoint a surveyor, the survey is to be conducted by the Village's inspector and appointed architect.  *Id.* § 6-75(c).  If the building is found to be unsafe or dangerous, the Village Board is empowered to make an application "at a special term of the [New York State] Supreme Court . . . for an order determining the building, wall or other structure to be a public nuisance

---

[4] The Village Code requires service of notice upon either "the owner or one of the owner's executors, legal representatives, agents, lessees or any other person having a vested or contingent interest in such premises" to be inspected.  Village Code § 6-74(a).  The Court uses "owner" to simplify the above for purposes of this opinion.

and directing that it be repaired and secured or taken down and removed." *Id.* § 6-77.  The

building inspector must also notify the property owner that if the building is found to be unsafe

or dangerous, the Village will make such application in the state court.  *Id.* § 6-75(b).

> All costs and expenses incurred by the Village in connection with the proceeding
> to remove or secure, including the cost of actually removing such building or
> structure, shall be assessed against the land on which said building or structure is
> located and shall be and become a lien on said land as of the date of such
> assessment.

*Id.* § 6-78.

New York state law, like Village Code § 6-77, empowers the Village to "enforce

obedience to its ordinances by injunction."  N.Y. Village Law § 20-2006(1)(c).  Accordingly, the

action brought by the Village in Westchester Supreme Court alleging code violations sought an

injunction requiring P&N to remedy the violations.  The Westchester Supreme Court reviewed

the Village's submissions and appeared satisfied that the Village Code was followed, noting that

the Village "established the merits of the claim."  (Vill. Defs.' Ex. B (Decision & Order, at 1).)

In the Judgment granting the Village a default judgment, the Westchester Supreme Court

> ADJUDGED that in accordance with [the] Decision and Order of this Court dated
> October 10, 2012, [P&N] is in violation of §§ 6-70 and 6-71 of the Village Code
> of the Village of Tuckahoe; and it is further

> ADJUDGED that in accordance with [the] Decision and Order of this Court dated
> October 10, 2012, [P&N] is enjoined from continuing to violate §§ 6-70 and 6-71
> of such Village Code by directing that [P&N]'s Building on the [Premises] be
> repaired or removed within 60 days of the entry of this Judgment; and it is further

> ADJUDGED that in accordance with [the] Decision and Order of this Court dated
> October 10, 2012, upon the failure of [P&N] to repair or remove [its] building on
> the [Premises] within 60 days of the entry of this Judgment, that [the Village]
> may, without further order of this Court, remove said Building and assess the cost
> of same by placing a lien therefor against the [Premises].

(Vill. Defs.' Ex. B (Judgment, at 2).)  Barbuti subsequently entered the Premises, after being

hired by the Village, to "determine the specifications for demolition," (Vill. Defs.' Ex. D, at 1),

which demolition is contemplated by Village Code § 6-78 and was approved by the Westchester

Supreme Court.  Based on the above process, the Court is satisfied that the provisions of the

Village Code meet "reasonable legislative or administrative standards" as required.  *Griffin v.*

*Wisconsin*, 483 U.S. at 873.

       In balancing the intrusion onto the property with Plaintiff's privacy interest, *see*

*Ferguson*, 532 U.S. at 78, Plaintiff's privacy interest in her "space," which allegedly contains

items to be used for her business as well as other personal belongings, does not rise to the same

level as her privacy interest in her home or someone else's home where she may be staying

overnight.  *Cf. Hamilton*, 538 F.3d at 168.  Significantly, Plaintiff makes no allegation that she

actually uses the "space" as an office or otherwise occupies or visits it.  On the other hand, the

interest of the Village in ensuring safety of the Premises is significant, especially if it constitutes

"a nuisance, having parts which are so attached that they may fall and injure members of the

public, or public or private property."  Village Code § 6-70(e).  Moreover, the Village Code itself

empowers the Village to authorize entry into the building to conduct a survey.  *See id.* § 6-75.

The fact that the Village waited for a court judgment before entering the Premises demonstrates

both acknowledgment and respect of Plaintiff's Fourth Amendment rights.  Thus, entering the

building after entry of the Judgment—which expressly allows the Village to demolish the

Premises—cannot in this situation be deemed a violation of the Fourth Amendment.  Entry for

purposes of assessing the structure in contemplation of demolition, as Defendants are alleged to

have done, is entirely reasonable under the circumstances.  It is implausible that the Village

would be expected to demolish the building without first entering it to assess its state, to

17

determine the proper method for its demolition, and to remove its contents.  Certainly Plaintiff would not have wanted Defendants to demolish the Premises with her possessions still inside. The balance of interest thus weighs in favor of the Village Defendants.

Accordingly, Barbuti and the Village Defendants' motions to dismiss for failure to state a claim must be granted.  The Court need not address whether the condition of the Premises created an exigent circumstance allowing a search without a warrant.

## IV. QUALIFIED IMMUNITY

Barbuti and the individual Village Defendants contend that they are entitled to qualified immunity.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011); *see also Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982) ("Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").  The question of immunity should be resolved "at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S.224, 227 (1991)).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  *Harlow*, 457 U.S. at 818–19. However, the fact that a right is clearly established does not necessarily defeat the immunity defense.  *See Zahra v. Town of Southold*, 48 F.3d 674, 687–88 (2d Cir. 1995).

"A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Vincent v.*

*Yelich*, 718 F.3d 157, 166 (2d Cir. 2013); *accord Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (personal liability "generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." (quoting *Anderson*, 483 U.S. at 639)). Courts generally consider "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support[s] the existence of the right in question; and (3) whether under preexisting law a reasonable official would have understood that his or her acts were unlawful." *Burns v. Citarella*, 443 F. Supp. 2d 464, 470 (S.D.N.Y. 2006) (citing *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991)); *accord Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011); *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 308 (S.D.N.Y. 2013); *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 212 (S.D.N.Y. 2013). A government official enjoys qualified immunity if he can show that "either (a) [his] action did not violate clearly established law, or (b) it was objectively reasonable for [him] to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.2d 246, 250 (2d Cir. 2001) (internal quotation marks and citations omitted). "Defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." *Rosen v. City of New York*, 667 F. Supp. 2d 355, 362 (S.D.N.Y. 2009) (quoting *Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997)). "The objective reasonableness test is satisfied if officials of reasonable competence could disagree on the legality of the defendants' actions." *Burns*, 443 F. Supp. 2d at 471.

It is possible that Barbuti may not be entitled to qualified immunity, as he is merely a private contractor and not a government official, and "private actors are not *automatically* immune." *Richardson v. Walker*, 521 U.S. 399, 412 (1997) (holding prison guards employed by

19

private contractor not entitled to qualified immunity); *see also Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992) (holding private parties invoking state replevin, garnishment, or attachment statutes not entitled to qualified immunity).  Nonetheless, the Court finds Barbuti's work for the Village similar to that of the private attorney in *Filarsky v. Delia*, 132 S. Ct. 1657, 1660–61, 1667–68 (2012), who was hired by a municipality to conduct an internal investigation of a fire department employee and was granted qualified immunity.  As such, Barbuti may properly assert the defense of qualified immunity.

Here, the Court has already found Plaintiff's Fourth Amendment rights were not violated. In light of this finding, they are clearly entitled to qualified immunity.  Moreover, officials of reasonable competence could determine that entry onto the Premises in preparation for its demolition, ordered by a court, was legal.[5]  *Cf. Burns*, 443 F. Supp. 2d at 471.  Thus, it was objectively reasonable for the individual Village Defendants to believe they did not violate the Fourth Amendment by entering the Premises in reliance on the Judgment.  *Johnson*, 239 F.2d at 250; *Rosen*, 667 F. Supp. 2d at 362.  Accordingly, the individual Village Defendants are entitled to qualified immunity, and their motion to dismiss must be granted.

---

[5] Plaintiff asserts that Barbuti relied on a court order in entering the Premises "but the [P]laintiff's name is not on it." (Pl.'s Opp'n Br. 17.)  Plaintiff is mistaken, as both the Judgment with Notice of Entry and the second page of the Decision and Order list Plaintiff's name underneath P&N's.  (Vill. Defs.' Ex. B.)

## V. CONCLUSION

For the stated reasons, Barbuti and the Village Defendants' motions to dismiss the Complaint are GRANTED.  The Clerk of Court is respectfully requested to terminate the motions (Doc. 26 & 35) and close the case.

Dated: July 30, 2014                        SO ORDERED:
       White Plains, New York

                                        NELSON S. ROMÁN
                                        United States District Judge

21